UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 95-31122
_____


STEVEN A LENERT, doing business as Dove Creations;
COLEMAN T BROWN, JR, doing business as Dove Creations

Plaintiffs-Counter Defendants-Appellants,

versus

DUCK HEAD APPAREL COMPANY INCORPORATED,

Defendant-Counter Claimant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Louisiana
(94-CV-448)
_____
September 25, 1996
Before DAVIS, JONES, and EMILIO M. GARZA, Circuit Judges.

EDITH H. JONES, Circuit Judge:[*]

Steve Lenert, Coleman Brown, and their Louisiana
partnership, Dove Creations, appeal the decision of the district
court granting the defendant's motions for partial judgment as a
matter of law. We affirm in part, reverse in part and remand. We
conclude that there is a triable fact issue as to whether the Duck
Tail logo is a derivative work, but the district court correctly

_____

[*] Pursuant to Local Rule 47.5, the court has determined that this
opinion should not be published and is not precedent except under the limited
circumstances set forth in Local Rule 47.5.4.

rejected appellants' claim for punitive damages under Louisiana's choice of law statutes.

## I. BACKGROUND

Steven Lenert and Coleman Brown formed a Louisiana partnership, Dove Creations, to market products jointly created by them(collectively Appellants). In 1987, Lenert and Brown conceived the idea of designing a logo of a "duck tail" which could be placed on T-shirts, sweatshirts, and other fabrics. Appellants hoped to market the "duck tail" design in conjunction with the "duck head" trademark owned by Duck Head Apparel Co. (Duck Head).[2]

Lenert's initial idea for the design was that of a vertical or "feeding duck" with the tail of the duck sticking out of the water, while the head of the duck was submerged to feed. Brown contacted an airbrush artist in Alabama who airbrushed this design onto a sweatshirt. The results, however, were unsatisfactory to Lenert and Brown.

Lenert and Brown then approached Keith Guillot, a commercial artist, and asked him to design the logo. Guillot made two duck tail designs, a vertical and a horizontal or "floating" duck tail. Both designs again proved unsatisfactory and Brown and Lenert decided to create the design themselves. Using a wooden

---

[2] In 1906, O'Bryan Brothers, Inc. registered a duck head as its trademark. Duck Head Apparel Company is the successor of O'Bryan Brothers and manufacturers casual wear clothing.

duck as their guide, Lenert and Brown produced sketches of a horizontal duck tail. Because of their desire to market the duck tail design with the duck head logo used by Duck Head, Lenert and Brown decided to use colors and lettering similar to those used in the Duck Head design. With colored sketch in hand, they returned to Guillot who took their drawing and prepared "mechanical camera ready art work" so that the logo could be imprinted on T-shirts and other merchandise.

Brown thereafter prepared a copyright application for the duck tail design and submitted it to the United States Copyright Office. Where the application asked whether the work submitted for copyright was a "derivative work," Brown marked the box "NA" (not applicable). Effective October 1, 1987, the United States Copyright Office issued a Copyright Registration Certificate to Dove Creations for the duck tail design.

Following the issuance of the copyright, Appellants entered into an oral licensing agreement with O'Bryan Brothers, Duck Head's predecessor. O'Bryan Brothers began marketing items bearing the duck tail logo in 1988. In 1990, after Duck Head acquired O'Bryan Brothers, the licensing agreement was modified by written contract. Appellants drafted the contract in Louisiana and mailed it to Duck Head in Georgia. Duck Head made one change to the contract and mailed it back to Appellants, who agreed to the change, initialed the contract, and mailed an initialed copy to

3

Duck Head.  Under the agreement as modified, Appellants received a royalty of $.20/per item sold.  Duck Head mailed royalty payments from Georgia to Appellants in Louisiana.

The parties' relationship continued until January 1992, when Duck Head notified Appellants that it intended to create a new duck tail design and would therefore cease marketing items printed with their duck tail design.  Before this occurred, Appellants claim that Duck Head twice offered to purchase their copyright.  Duck Head thereafter began selling tee-shirts with a new duck tail design.

In March 1994, Appellants brought suit for breach of contract, unfair trade practices, and copyright infringement.  Appellants sought various remedies, including punitive damages.  Cross motions for partial summary judgment were filed by the parties on the issue of the validity of Appellants' copyright.  Duck Head additionally filed a motion for partial summary judgment seeking dismissal of the punitive damages claim.

The district court granted both of Duck Head's motions, dismissing the copyright infringement claim and the punitive damages claim.  In dismissing the copyright claim, the district court found that where a "party deliberately, or knowingly, failed to advise the Copyright Office of facts which might have caused the copyright application to be rejected," the validity of the copyright may be rebutted.  The district court concluded that the

4

"duck tail" design was derivative of the "duck head" design; that Appellants knowingly omitted from their copyright application the derivative nature of the design; and that the omission effectively denied the Copyright Office a fair chance to ascertain the validity of the copyright. The district court dismissed the punitive damages claim after finding that under Louisiana's choice of law provisions, Louisiana law applied and that punitive damages were not available. Pursuant to Federal Rule 54(b), Appellants appeal.

## II. DISCUSSION

This appeal presents several questions for our consideration. First, whether the duck tail design is a derivative work; second, assuming the duck tail design is a derivative work, whether the district court properly refused to enforce Appellants' copyright; third, issues of authorship and originality of the design; and fourth, whether the district court properly applied Louisiana's choice of law provisions concerning the availability of punitive damages.

We review the district court's grant of partial judgment as a matter of law *de novo*, applying the same standard as the district court. *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). Under this familiar standard, judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.

5

Civ. P. 56(c). In seeking judgment as a matter of law, the movant must "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). If the movant does so, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). For purposes of judgment as a matter of law, "[f]actual questions and inferences are viewed in the light most favorable to the nonmovant." *Rogers v. International Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996).

## A. Derivative Works

Duck Head contends that in granting partial judgment as a matter of law, the district court properly found the duck tail design a derivative work of pre-existing sources. Duck Head asserts that Appellants' design is directly copied from several sources, including the airbrush sweatshirt, Guillot's designs, the wooden duck, and the Duck Head logo. We disagree.

A "derivative work" is defined by the Copyright Act as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101. To constitute

6

a derivative work, the work must be substantially copied from a pre-existing work. *See Vault Corporation v. Quaid Software Limited*, 847 F.2d 255, 267 (5th Cir. 1988); *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984), *cert. denied*, 470 U.S. 1052, 105 S. Ct. 1753 (1985); *Nimmer on Copyright* § 3.01 at 3-2 -3 (*Nimmer*). Mere borrowing of the ideas of a prior work, as opposed to the expression of those ideas, does not make a particular work a derivative. 17 U.S.C. § 102(a)&(b); *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 533 (5th Cir.), *cert. denied*, __ U.S. __, 115 S. Ct. 82 (1994); *Franklin Mint Corp. v. National Wildlife Art Exchange, Inc.*, 575 F.2d 62, 64-65 (3d Cir.), *cert. denied*, 439 U.S. 880, 99 S. Ct. 217 (1978); *Nimmer* § 3.01 at 3-3.[3]

Viewing the evidence in the light most favorable to Appellants, a genuine issue of material fact exists as to whether the duck tail logo is a derivative work of pre-existing works. While the "duck tail" and the "duck head" logo are similar, there are differences; to state the obvious, the use of a duck tail

---

[3] Concerning derivatives, *Nimmer* explains that "the term derivative work in a technical sense does not refer to all works that borrow in any degree from pre-existing works. A work is not derivative unless it has *substantially* copied from a prior work. If that which is borrowed consists merely of ideas and not of the expression of ideas, then although the work may have in part been derived from prior work, it is not a derivative work. Put another way, a work will be considered a derivative work only if it would be considered an infringing work if the material that it has derived from a pre-existing work had been taken without the consent of a copyright proprietor of such pre-existing work." *Nimmer* § 3.01 at 3-3.

rather than a duck head, and the use of waves in the duck tail design.  As such, a fact issue remains and summary judgment is inappropriate.  *See Ganz Bros. Toys v. Midwest Importers of Cannon Falls, Inc.*, 834 F.Supp. 896 (E.D.Va. 1993).

## B. Enforcement of the Copyright[4]

Although we have concluded that summary judgment is inappropriate as to the issue of the derivative nature of the duck tail design, for the benefit of the court below we discuss the enforcement of Appellants' copyright assuming that the duck tail design is found to be a derivative work.  We express no opinion, of course, as to whether the duck tail design is or is not a derivative work.

Possession of a copyright registration certificate constitutes a rebuttable presumption of a valid copyright. *Lakedreams v. Taylor*, 932 F.2d 1103, 1108 n.10 (5th Cir. 1991). This presumption is overcome and the registration may be found "invalid and incapable of supporting an infringement action" when an applicant knowingly fails "to advise the Copyright Office of facts which might have led to the rejection of a registration application." *Masquerade Novelty, Inc. v. Unique Industries, Inc.*, 912 F.2d 663, 667 (3d Cir. 1990); *see Whimsicality, Inc. v. Rubie's Custome Co., Inc.*, 891 F.2d 452, 455 (2d Cir. 1989); *Eckes v. Card*

---

[4]    Judge Garza does not concur in this Part II.B.

8

*Prices Update*, 736 F.2d 859, 861-62 (2d Cir. 1984); *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 828 (11th Cir. 1982); *Nimmer* § 7.20 at 7-201 -02. Innocent or inadvertent omissions, in contrast, will generally not be sufficient to invalidate the registration. *Masquerade Novelty*, 912 F.2d at 668 n.5; *Eckes*, 736 F.2d at 861-62; *Whimsicality*, 891 F.2d at 455; *GB Marketing USA Inc. v. Gerolsteiner Brunner*, 782 F. Supp. 763, 774 (W.D.N.Y. 1991).

The failure to disclose the derivative nature of a work in the copyright application does not automatically invalidate the registration. *GB Marketing*, 782 F. Supp. at 774 (failure to disclose derivative); *see Toy Loft*, 684 F.2d at 829 (omission of pre-existing work did not invalidate because of lack of scienter); *Ganz Bros. Toys v. Midwest Importers of Cannon Falls, Inc.*, 834 F. Supp. 896, 900 (E.D. Va. 1993)(omission of derivative nature is minor); *Flag Fables, Inc. v. Jean Ann's County Flags and Crafts, Inc.*, 730 F. Supp. 1165, 1170-71 (D. Mass. 1989)(omission of derivative nature not legally significant); *JBJ Fabrics, Inc. v. Brylane, Inc.*, 714 F. Supp. 107, 109 (S.D.N.Y. 1989)(omission of derivative nature not fatal). But, as noted *supra*, when an applicant knowingly fails to identify the derivative nature of the work, or the use of elements not of the applicant's own creation, the court may decline to enforce the copyright. *Russ Berrie & Co.,*

9

*Inc. v. Jerry Elsner Co., Inc.*, 482 F. Supp. 980, 987-89 (S.D.N.Y. 1980)(court declined to enforce copyright where applicant knowingly failed to disclose pre-existing work); *GB Marketing*, 782 F. Supp. at 774-76 (knowing omission of derivative nature permits grant of summary judgment refusing to enforce copyright). A court's failure to enforce the copyright in such situations is appropriate because the copyright application requires the disclosure of a work's derivative nature; the omission of the work's derivative nature deprives the Copyright Office of the opportunity fully to evaluate the application; and the derivative work is protected only to the extent of the new material contained in the derivative work. *See* 17 U.S.C. §§ 103(b), 409(9); *Russell v. Price*, 612 F.2d 1123, 1128 (9th Cir. 1979), *cert. denied*, *Drebin v. Russell*, 446 U.S. 952, 100 S. Ct. 2919 (1980); *Nimmer* § 3.04[A] at 3-18.[5]

Assuming the duck tail design is found to be a derivative work, the court may decline to enforce the Appellants' copyright if the work's derivative nature was knowingly omitted by the Appellants. The evidence now before the court for purposes of summary judgment, however, does not support an inference that Appellants knowingly omitted this information. While it is clear

---

[5]     Even courts which have enforced a copyright despite omissions on the application recognize that enforcement may be improper if the applicant knowingly omitted the information from the copyright application. *See Toy Loft*, 684 F.2d at 828 (evidence failed to show scienter); *Midwest Importers*, 834 F. Supp. at 900 (no credible proof of intent to mislead); *JBJ Fabrics*, 714 F. Supp. at 109 (if deliberate, then invalid).

that Appellants knew of the existence of the duck head logo and purposely fashioned their design to complement that logo, the only evidence of intent includes a statement from Brown that he did not think the design was a derivative, and the fact that in a previous copyright application concerning a different design, Brown did disclose the derivative nature of the work on the copyright application. The inference may be drawn from this evidence that Appellants knew what constituted a derivative work and disclosed this information when appropriate but did not think the duck tail design in this case was a derivative work. Judgment as a matter of law was therefore not proper as to the issue of intent. *See International Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1265 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059, 112 S. Ct. 936 (1992); *Leonard v. Dixie Well Service & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir. 1987).

## C. Authorship and Originality

Duck Head asserts two additional grounds on which the district court's ruling concerning Appellants' copyright claim can be affirmed. Although raised below, these arguments were not addressed by the district court. Duck Head contends the actual author of the duck tail design is Guillot and that the Appellants' infringement action fails for lack of originality. We disagree.

Copyright protection vests initially with the "author" of the work. 17 U.S.C.A. §§ 102(a), 201(a); *Nimmer* § 1.06[A] at 1-44.40. "As a general rule, the author is the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 736, 109 S. Ct. 2166, 2171 (1989); *see Goldstein v. California*, 412 U.S. 546, 561, 93 S. Ct. 2303, 2312; *Lakedreams v. Taylor*, 932 F.2d 1103, 1108 (5th Cir. 1991).

During the course of the proceedings below, Appellants submitted the affidavits of Brown and Guillot. Brown's affidavit describes how he and Lenert created the duck tail design. Guillot's affidavit provides that his role in the development of the duck tail logo was limited to "slight" refinements to the duck tail design brought to him by Brown; the preparation of mechanical art work necessary for silkscreening the design onto fabrics; and drawing the duck tail lettering at Brown's direction. The only inference to be drawn from these affidavits is that Brown and Lenert are the authors of the duck tail design. Duck Head's authorship argument, therefore, fails for purposes of summary judgment. *Cf. Lakedreams*, 932 F.2d at 1108 (author's work is protected even if the author did not put the material into the form distributed to the public).

12

We likewise reject Duck Head's originality argument. Originality is essential for copyright protection but requires little to be satisfied. *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 345, 111 S. Ct. 1282, 1287 (1991). Originality requires only that the work be independently created by the author and possess some degree of creativity. *Id.; Hodge Mason Maps, Inc. v. Montgomery Data, Inc.*, 967 F.2d 135, 141 (5th Cir. 1992)(sufficient originality in maps because of selection, coordination, and arrangement of facts). "To be sure, the requisite level of creativity is extremely low, even a slight amount will suffice." *Feist Publications*, 499 U.S. at 345, 111 S. Ct. at 1287. Appellants satisfy the originality standard as a matter of law.

### D. Choice of Law and Punitive Damages

The district court concluded that under Louisiana's choice of law provisions relating to delictual and quasi-delictual obligations, Louisiana law applied to Appellants' alleged tort claims and that punitive damages were not available. *See* La. Civ. Code Ann. article 3542-48 (West 1994). In so finding, the district court assumed that Appellants alleged tortious conduct in their complaint. Necessary to the determination of the availability of punitive damages in this case is whether Duck Head is "domiciled"

13

in Louisiana for purposes of article 3546.[6]  This in turn requires that Duck Head "transacts business in [Louisiana] and incurs a delictual or quasi-delictual obligation arising from activity within [Louisiana]."  *See* La. Civ. Code Ann. article 3548, which provides:

> For purposes of this Title, and provided it is appropriate under the principles of Article 3542, a juridical person that is domiciled outside this state, but which transacts business in this state and incurs a delictual or quasi-delictual obligation arising from activity within this state, shall be treated as a domiciliary of this state.

Plaintiffs contend that the phrase "arising from activity within [Louisiana]" refers only to conduct of the defendant which occurred in Louisiana.[7]  Based on the reasoning of the district court, however, we disagree.  We find no error in the district court's analysis of the relevant statutory provisions.  *See Symeonides*,

---

[6]  Article 3546 provides: "Punitive damages may not be awarded by a court of this state unless authorized: (1) By the law of the state where the injurious conduct occurred and by the law of the state where the injury occurred or the law of the place where the person whose conduct caused the injury was domiciled; or (2) By the law of the state in which the injury occurred and by the law of the state where the person whose conduct caused the injury was domiciled."  In this case, the injury, if any, occurred in Louisiana.  *See Blanchard & Company, Inc. v. Manley*, 1994 WL 706949 (E.D. La. 1994).  The parties agree that Duck Head's conduct occurred in Georgia for purposes of Art. 3546(1).

[7]  In the alternative, plaintiffs assert in their reply brief that their punitive damages claim arose only out of activity that occurred in Georgia, Duck Head's headquarters, or wherever Duck Head or its parent or affiliated corporations have an office.  Even if this is true, it does not create a fact issue concerning the statute's application, because the tort obligation to the plaintiffs arose out of Duck Head's business activity within Louisiana.

14

Louisiana's New Choice of Law for Tort Conflicts, and Exegesis, 66 Tul. L. Rev. 677, 761 (1992). The district court therefore properly awarded summary judgment on the punitive damages claim.

## III. CONCLUSIONS

For the foregoing reasons, the judgment of the district court is AFFIRMED IN PART and REVERSED and REMANDED IN PART for further proceedings consistent herewith.